IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RANDALL LING, | § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. 3:05-CV-1754-P |
| v. | § § | |
| CITY OF GARLAND, MITCH BATES, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES, GLEN L. SHAW, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES, DEMARCUS L. BANDA, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES, AND WILLIAM L. MOTT, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES, | § § § § § § § § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Now before the Court is the City of Garland and Mitch Bates's Joint Motion to Dismiss for Failure to State a Claim (12(b)(6)), filed September 21, 2005. Plaintiff responded on October 11, 2005, and the City of Garland (hereinafter "the City") and Mitch Bates (hereinafter "Chief Bates," "Defendant Bates," or "Bates") filed a joint reply on October 26, 2005. For the reasons stated below, the City and Chief Bates's Joint Motion to Dismiss is hereby GRANTED in PART and DENIED in PART. The Motion is GRANTED in regards to Plaintiff's claims based on assault, battery, conspiracy, intentional infliction of emotional distress, and negligence. These claims are

DISMISSED WITH PREJUDICE.[1] In regards to Plaintiff's claims based on 42 U.S.C. § 1985(3), Plaintiff has 15 days from the date of this order to amend his complaint so as to state a claim upon which relief can be granted. If Plaintiff does not amend his complaint within 15 days, the Court will dismiss Plaintiff's 42 U.S.C. § 1985(3) claim with prejudice. The Motion is DENIED in regards to Plaintiff's claims based on 42 U.S.C. § 1983.

**I. Factual Background**

On September 6, 2004, Plaintiff Randall Ling (hereinafter "Ling") was traveling westbound on State Highway 190 on a 2003 Suzuki motorcycle.[2] (Compl. ¶ 11.) Defendant Glen L. Shaw (hereinafter "Defendant Shaw" or "Shaw"), an officer with the Garland Police Department, observed Ling and pursued him on an alleged speeding violation. (*Id.* ¶ 12.) During the ensuing chase, two other officers, Defendants William L. Mott (hereinafter "Defendant Mott" or "Mott") and Demarcus L. Banda (hereinafter "Defendant Banda" or "Banda"), joined the pursuit. (*Id.* ¶ 13.)

Ling maintains that he attempted to peacefully surrender by stopping the motorcycle, turning off the key, and raising his hands. (*Id.* ¶ 15.) He claims that despite this attempted surrender Defendant Shaw dove over the motorcycle and tackled him. (*Id.* ¶ 16.) Ling alleges that he was then physically attacked, beaten, and kicked by Shaw in a fit of rage. (*Id.*) He claims that Shaw

---

[1] Plaintiff asserts claims against the individual defendants in both their individual and official capacities. "Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 n.55 (1978)). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* at 166. As such, the Court's rulings in this order in regards to the City also apply to the claims against Defendant Bates in his official capacity.

[2] For purposes of deciding this Motion to Dismiss, the Court accepts Plaintiff's well-pleaded facts as true.

**Memorandum Opinion and Order**
3:05-CV-1754-P
Page 2 of 12

grabbed his helmet, twisted his head to the side, and then struck him repeatedly in the face through the opening on the front of the helmet. (*Id.*) One of the blows apparently caused a wound above Ling's left eye that required six stitches to close. (*Id.*) During this incident, Shaw was allegedly screaming profanities at Ling. (*Id.*) According to Ling, Defendants Mott and Banda witnessed the attack and did nothing to prevent it. (*Id.* ¶ 17.) The police vehicles operated by Mott and Banda were equipped with video recorders that were operating during the incident. (*Id.* ¶ 14.)

The officers arrested Ling, and he was taken to Baylor Hospital in Garland for treatment of his injuries. (*Id.* ¶ 18.) Defendant Shaw went to the hospital and waited with Ling. (*Id.*) Ling maintains that a nurse working at Baylor overheard Defendant Shaw ask Defendant Banda if he had seen the surveillance tape. (*Id.* ¶ 19.) Banda allegedly answered that he had. Ling claims that Defendant Shaw then asked Banda to "lose it." (*Id.*) Ling also claims that he was hesitant to tell the nurse how he received the injury in the presence of the officers. (*Id.*) The nurse apparently asked Shaw, and he responded that Ling had fallen in the grass. (*Id.*) The nurse allegedly asked Shaw a number of more direct questions, and he refused to answer. (*Id.*)

Before Ling was released by the hospital, Defendant Shaw attempted to leave with him out a back door. (*Id.* ¶ 20.) The nurse treating Ling saw them leaving and attempted to stop them. (*Id.*) In response, Shaw apparently stated that he did not have time to sit around and wait. (*Id.*) He also allegedly said something along the lines of "Ling is a big boy; he can take care of himself." (*Id.*) Ling then left the hospital with Defendant Shaw. (*Id.*) The nurse called the Garland Police Department and informed the jail supervisor of the confrontation with Shaw. (*Id.* ¶ 21.) The nurse was informed that Ling would be returned to the hospital. (*Id.*)

Defendant Shaw subsequently returned to Baylor along with Ling. (*Id.* ¶ 22.) Upon his return, Shaw was apparently rude to the hospital staff, telling another nurse that professional courtesy would no longer be extended to doctors and nurses, or words to that effect. (*Id.*)

Shaw eventually left the hospital a second time with Ling in custody. (*Id.* ¶ 23.) In doing so, Shaw allegedly backed into a pole and used additional obscene language before speeding away. (*Id.*) Ling claims that at this time Shaw drove fast and recklessly without regard for his safety. (*Id.*)

On September 19, 2003, Ling filed an internal affairs complaint against Defendants Shaw, Banda, and Mott. (*Id.* ¶ 24.) Upon completion of the investigation, Lt. Van Cleve recommended that Chief Bates sustain the accusations of unnecessary force, conduct unbecoming an officer, and improper treatment of a prisoner against Defendant Shaw, and that he clear Defendants Motts and Banda of any wrongdoing. (*Id.* ¶ 25.) Lt. Van Cleve also suggested that Bates dismiss an allegation of a pursuit policy violation. (*Id.*) On October 24, 2003, Chief Bates followed these recommendations and suspended Shaw for fifteen days without pay. (*Id.*)

On November 18, 2003, the Texas Rangers began an investigation of the incident at the request of Chief Bates and the Dallas County District Attorneys Office. (*Id.* ¶ 26.) As a result of the Rangers' investigation, Defendant Shaw was charged with assault. (*Id.*) He was eventually convicted of assault and terminated from the Garland Police Department. (*Id.*) Defendants Banda and Mott were also terminated; however, Mott was later reinstated after appealing his termination (*Id.*)

## II. Rule 12(b)(6) Legal Standard

Rule 12(b)(6) authorizes dismissal of a pleading for failure to state a claim upon which relief

can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss for failure to state a claim is viewed with disfavor and should rarely be granted. *See Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). Such a motion should be granted only if it appears beyond doubt that the nonmoving party could prove no set of facts in support of its claims that would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957); *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 524 (5th Cir. 1994).

In determining whether dismissal should be granted, the Court must accept all well-pleaded facts as true and view them in the light most favorable to the party against whom dismissal is sought. *See Capital Parks, Inc. v. Southeastern Adver. and Sales Sys., Inc.*, 30 F.3d 627, 629 (5th Cir. 1994); *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994). The Court limits its inquiry to whether the nonmoving party is entitled to offer evidence to support its claims and does not address whether the party will ultimately prevail on the merits. *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999). Dismissal is proper when "even the most sympathetic reading of [the] pleadings uncovers no theory and no facts that would subject the [moving party] to liability." *Jacquez v. Procunier*, 801 F.2d 789, 791-92 (5th Cir. 1986). "At this stage of the proceedings, '[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Jackson v. Birmingham Bd. of Educ.*, 125 S. Ct. 1497, 1510 (2005) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

### III. Analysis

#### A. Conspiracy under 42 U.S.C. § 1985(3)

Ling alleges that Defendants Bates, Shaw, Banda, and Mott violated 42 U.S.C. § 1985(3) by

conspiring to deprive him of both his liberty without due process of law and his right to equal protection of the laws. (Compl. ¶ 29.) In order to state a claim under 42 U.S.C. § 1985(3), the plaintiff must "show that the conspiracy was motivated by a class-based animus." *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994). In the instant case, Ling fails to allege any facts showing that Defendants were motivated by "some racial or otherwise class-based, invidiously discriminatory animus." Indeed, Ling's complaint does not allege that he belongs to any particular protected class, nor does it contain allegations of class-based animus.

Ling's response tries to correct this defect in his complaint by claiming that he "is a member of several classes . . . ." (Resp. at 5.) However, even if the Court were to interpret this extremely generic statement as an allegation of membership in a class protected by § 1985(3) and then allowed Ling to amend his complaint, he would still not state a claim under 42 U.S.C. § 1985(3). An allegation of membership in a protected class by itself is not enough to state a claim under § 1985(3). To state a claim, the plaintiff must also allege that the conspiracy was motivated by animus towards the class. Plaintiff has made no such allegation here, and there is nothing in the Complaint from which such animus could be inferred. Ling has thus failed to state a claim of a conspiracy to deprive him of his civil rights in violation of § 1985(3).

### B. Conspiracy under 42 U.S.C. § 1983

Ling also brings a conspiracy claim under 42 U.S.C. § 1983. "To state a cause of action under § 1983, Appellant must allege that some person, acting under state or territorial law, has deprived him of a federal right." *Cinel v. Connick*, 15 F.3d 1338, 1342 (5th Cir. 1994). "A conspiracy may be charged under section 1983 as the legal mechanism through which to impose

liability on all of the defendants without regard to who committed the particular act . . . ." *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995). "A conspiracy may also be used to furnish the requisite state action." *Villanueva v. McInnis*, 723 F.2d 414, 418 (5th Cir. 1984). In any case, the plaintiff must still prove an actual deprivation of a "a federally protected or constitutionally secured right or privilege." *Id.* Therefore, in order to support a § 1983 conspiracy claim the plaintiff "must allege facts that suggest: 1) an agreement between the . . . defendants to commit an illegal act, *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir.1982), and 2) an actual deprivation of constitutional rights, *Villanueva v. McInnis*, 723 F.2d 414, 418 (5th Cir.1984)." *Cinel*, 15 F.3d at 1343. "'[M]ere conclusory allegations of conspiracy cannot, absent reference to material facts,' state a substantial claim of federal conspiracy under 42 U.S.C. § 1983." *Davis v. Brazos County Tex.*, 98 Fed. Appx. 976, 978 (5th Cir. 2004) (quoting *Arsenaux*, 726 F.2d at 1024).

### 1. Claim Against Chief Bates

Chief Bates moves for dismissal of the § 1983 conspiracy claim on the grounds that the Complaint contains no allegation of his personal participation in the events on September 6. (Mot. at 7.) In response, Ling admits that Bates was not personally involved in the assault and subsequent events on September 6. (Resp. at 6.) However, Ling maintains that Bates is a co-conspirator for his role in the subsequent cover-up. (*Id.*) In this regard, the Complaint alleges that on October 24, 2003, Chief Bates accepted the recommended findings of the Garland Police Department's internal affairs unit by suspending Defendant Shaw for fifteen days and imposing no punishment upon Defendants Mott and Banda. (Compl. ¶ 25.)

As noted above, in order to state a § 1983 conspiracy claim the plaintiff must allege facts

suggesting that the defendant agreed to commit an illegal act. Viewed in the light most favorable to Plaintiff, the allegations here suggest that Chief Bates may have agreed to participate in the cover-up through his participation in the internal affairs investigation. While the Complaint does not provide much factual detail regarding Chief Bates's participation, it does state enough to survive a motion to dismiss. Plaintiff is thus entitled to offer evidence in support of his claim.

### 2. Claim Against the City of Garland

The City of Garland moves for dismissal of the § 1983 conspiracy claim on the grounds that Ling has failed to plead specific facts suggesting that a particular policy or custom of the City deprived Ling of his civil rights. (Mot. at 9–10.) "Local governing bodies . . . can be sued directly under § 1983 where the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Department of Social Servs.*, 436 U.S. 658, 690 (1978). However, "a municipality cannot be held liable solely because it employs a tortfeasor." *Id.* at 691. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. "Municipal liability under 42 U.S.C. § 1983 requires proof of 1) a policymaker; 2) an official policy; 3) and a violation of constitutional rights whose 'moving force' is the policy or custom." *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003).

As noted above, the City argues that Ling's claim must fail because he did not plead specific facts suggesting that a particular policy or custom of the City deprived Ling of his civil rights. (Mot.

at 9–10.) However, Ling's Complaint does include an allegation that the City has a duty to adequately supervise, train, and discipline its officers. (Compl. ¶ 55.) It also includes an allegation that the City continued to employ Shaw despite his history of using excessive force, acting in dereliction of duty, and engaging in conduct unbecoming an officer. (*Id.* ¶ 56.)

While the Complaint in this case could have been more artfully drafted, the Court finds that it satisfies the liberal pleading standard set forth in Fed. R. Civ. P. 8(a). In recent years, the Supreme Court has made it clear that a plaintiff need not plead detailed facts in support of each and every claim to satisfy Rule (8)(a). *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 511 (2002); *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163 (1993). However, it remains necessary for the plaintiff to provide a statement of the claim that provides enough information to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47 (1957). The Complaint in the instant case satisfies this liberal pleading standard. The Complaint puts the City on notice of Plaintiff's allegations that the conduct of the officers was the result of the City's policies or customs regarding the supervision, training, and discipline of its officers or its policies or customs regarding the continued employment of officers with a history of using excessive force, acting in dereliction of duty, and engaging in conduct unbecoming an officer. Ling is therefore entitled to offer evidence in support of his claim.[3]

---

[3] Plaintiff's Complaint includes a demand for punitive damages in the amount of $3,000,000 against the City (Compl. ¶ 29.) However, "a municipality is immune from punitive damages under 42 U.S.C. § 1983." *Newport v. Fact Concerts,* 453 U.S. 247, 271 (1981). As a result, even if Ling does prevail upon his § 1983 claim against the City, he is not entitled to seek an award of punitive damages.

### C. State Law Tort Claims

#### 1. Claims against Chief Bates

Plaintiff relies upon the doctrine of respondeat superior to assert state law tort claims against Chief Bates. (Compl. ¶¶ 34, 38, 43, 52, 60.) Chief Bates argues that these claims must be dismissed because Plaintiff has failed to allege that an employer/employee relationship existed between Chief Bates and Shaw. "Under the doctrine of respondeat superior, an employer is vicariously liable for the negligence of an agent or employee acting within the scope of his or her agency or employment, although the principal or employer has not personally committed a wrong." *Baptist Mem. Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex. 1998). In the instant case, no employer/employee relationship existed between Chief Bates and Shaw. Both were employees of the City of Garland. (Compl. ¶ 4.) As a result, Bates cannot be held vicariously liable for Shaw's actions under the doctrine of respondeat superior.

#### 2. Claims against the City

Plaintiff also asserts state law tort claims against the City on the basis of respondeat superior. (Compl. ¶¶ 34, 38, 43, 52, 60.) Plaintiff brings claims based on assault, battery, conspiracy, intentional infliction of emotional distress, and negligence. (*Id.*) "A municipality, as a political subdivision of the state, is not liable for the acts or conduct of its officers or employees unless the municipality's common law immunity is waived by the Texas Tort Claims Act." *City of Lancaster v. Chambers*, 883 S.W.2d 650, 658 (Tex. 1994). The Texas Tort Claims Act (hereinafter the "TTCA") does not waive immunity for claims "arising out of assault, battery . . . or any other

intentional tort . . . ." *Id.* § 101.057; *Gillum v. City of Kerrville*, 3 F.3d 117, 123 (5th Cir. 1993). The tort of intentional infliction of emotional distress falls within the ambit of section 101.057, *Ganther v. Ingle*, 75 F.3d 207, 210 (5th Cir. 1996), as does a cause of action for civil conspiracy involving an intentional tort. *Washington v. City of Arlington*, No. 4:05-CV-175-BE, 2005 U.S. Dist. LEXIS 12375, at *4 (N.D. Tex. June 23, 2005) (Bleil, Mag. J.); *see also Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 614 (Tex. 1996) (noting that "[c]ivil conspiracy requires specific intent" and that the "'gist of a civil conspiracy' is the injury the conspirators intend to cause"). Because Ling's causes of action based on assault, battery, conspiracy, and intentional infliction of emotional distress involve intentional tortious conduct, they must be dismissed on the basis of the City's immunity.

In regards to Ling's negligence claim, the TTCA allows for municipal liability based on: (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

> (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and
>
> (B) the employee would be personally liable to the claimant according to Texas law; and

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the

claimant according to Texas law.

Tex. Civ. Prac. & Rem. Code Ann. § 101.021 (Vernon 2005). In the instant case, Ling does not allege that his injuries arose from the operation or use of a motor-driven vehicle or motor-driven equipment, nor does he allege that they were caused by the "use" of tangible personal or real property. Therefore, Ling has failed to state a claim against the City based on negligence under the TTCA.

## Conclusion

For the reasons stated above, the City and Chief Bates's Joint Motion to Dismiss is hereby GRANTED in PART and DENIED in PART. The Motion is GRANTED in regards to Plaintiff's claims based on assault, battery, conspiracy, intentional infliction of emotional distress, and negligence. These claims are DISMISSED WITH PREJUDICE. In regards to Plaintiff's claims based on 42 U.S.C. § 1985(3), Plaintiff has 15 days from the date of this order to amend his complaint so as to state a claim upon which relief can be granted. If Plaintiff does not amend his complaint within 15 days, the Court will dismiss Plaintiff's 42 U.S.C. § 1985(3) claim with prejudice. The Motion is DENIED in regards to Plaintiff's claims based on 42 U.S.C. § 1983.

**IT IS SO ORDERED.**

Signed this 17th day of January 2006.

JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE